UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BRIAN PAPWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:22-CV-461-KAC-JEM |
| | ) | |
| UNITED STATES OF AMERICA THROUGH ITS DEPARTMENT OF THE INTERIOR AND ITS NATIONAL PARKS SERVICE, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant United States of America's "Motion for Summary Judgment" [Doc. 32]. Because the statute of limitations bars Plaintiff Brian Papworth's claims, the Court grants Defendant's Motion and dismisses this action without prejudice.

**I.     Background**[1]

In 1944, Congress passed a statute authorizing the Secretary of the Interior to "accept," "donations of land and interests in land in the State of Tennessee for the construction of a scenic parkway" located "parallel to" "the Great Smoky Mountains National Park and connecting with the park." *See* 16 U.S.C. § 403h-11. The statute provided that "[a]ll property" the United States acquired under the statute was to "become a part of the Great Smoky Mountains National Park." *Id.* This project became known as the Foothills Parkway. Today, portions of the Foothills Parkway have been developed, but it remains incomplete.

---

[1] Because Plaintiff is the nonmoving Party, the Court describes the facts in the light most favorable to him. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Ogle family owned 47 acres of land in Gatlinburg, Tennessee [*See* Doc. 34-1]. In 1969, the State of Tennessee instituted condemnation proceedings for a 13-acre piece of that land [*See* Docs. 34-1, 34-3 at 1-3]. The Sevier County Circuit Court "divested" the Ogle's of "all the right, title and interest" in the 13-acre tract and granted the State of Tennessee an interest in the 13-acre tract [Doc. 34-3 at 3]. In 1978, Tennessee conveyed its interest in the 13-acre tract to the United States to be part of the Foothills Parkway [*See* Doc. 34-5]. In 1986, the Ogle family subdivided their remaining land next to the condemned 13-acre tract. *See* Sevier Cnty. Register of Deeds, Bk. 366 at 696; *see also id.* Bk. 464 at 748.[2]

In "March" 1996, Plaintiff purchased a 1.71-acre piece of the remaining Ogle land, listed at the address "1065 Glades Road" (the "Papworth Property") [Doc. 34-10 at 14, 16 (Papworth Dep. 13:22-25, 15:7-10); *see also* Docs. 34-8, 34-9]. A portion of the 13-acre tract earmarked for the Foothills Parkway separates the Papworth Property from Glades Road [*See* Doc. 34-8]. Before Plaintiff purchased the Papworth Property, a prior owner acquired a right of way to access the property via "Reed" (or "Reeds") Ridge Road [*See* Doc. 34-6].

There is also a "10-yard wide, 50-yard long stretch of Gravel Driveway that runs from [] Glades Road," over the 13-acre tract earmarked for the Foothills Parkway, to the Papworth Property (the "Gravel Driveway") [Doc. 34-10 at 14 (Papworth Dep. 13:15-19)]. When Plaintiff purchased the Papworth Property, his realtor told him that he had a "non-deeded right-of-way" to use the Gravel Driveway and that the Gravel Driveway "had been used as a driveway since 1929" [*See id.* at 17, 21 (Papworth Dep. 16:23-25, 20:3-7)]. Around the time Plaintiff purchased

---

[2] The Court may take judicial notice of public records. *See, e.g.*, *Davis v. Colerain Twp.*, 51 F.4th 164, 176 (6th Cir. 2022) (citing Fed. R. Evid. 201(d)). And the Court properly judicially notices these facts because they can be "accurately and readily determined from sources whose accuracy cannot reasonable be questioned." *See* Fed. R. Evid. 201(b).

2

the Papworth Property, "[i]t had been brought to his attention" that the Papworth Property "abutted federal property" [*Id.* at 20 (Papworth Dep. 19:18-21)].

Docket Entry 34-8 provides a visual representation of the immediately relevant land with reasonable fidelity [*See* Doc. 34-8]. Below is a scaled-down version.



In the years after Plaintiff purchased the Papworth Property, he had several interactions with the National Park Service concerning the Gravel Driveway. Between "'96 and '98," Plaintiff placed a wooden sign near[3] the Gravel Driveway on the 13-acre tract earmarked for the

---

[3] The record is unclear whether this sign was located on the Gravel Driveway or off to the side, still on the 13-acre tract earmarked for the Foothills Parkway. Plaintiff testified that he placed

Foothills Parkway [Doc. 34-10 at 28-30 (Papworth Dep. 27:5-9, 28:17-25, 29:1-10)]. A National Park Service Ranger named "Ron Parrish" "requested that [Plaintiff] take [the sign] down" [*Id.* at 28-30 (Papworth Dep. 27:5-9, 28:17-25, 29:1-10)]. Plaintiff "immediately took [the sign] down," explaining to Ranger Parrish that he "didn't know what he was allowed to do and what he wasn't allowed to do" on or near the Gravel Driveway [*Id.* at 29 (Papworth Dep. 28:12-18)]. Ranger Parrish told Plaintiff to remove the sign because "it was inappropriate or improper" [*Id.* at 30-31 (Papworth Dep. 29:17-25, 30:2-6)]. At some point thereafter, Plaintiff erected a new sign on the Gravel Driveway, and he has not had "a single" conversation with a National Park Service official about that new sign [*See id.* at 31 (Papworth Dep. 30:14-24)].

In "'99 or 2000," Plaintiff had a conversation with a National Park Service Superintendent named "Karen Wade" about the Gravel Driveway [*Id.* at 25-26 (Papworth Dep. 24:10-25, 26:1)]. In that conversation, Superintendent Wade told Plaintiff "loosely": "don't mess with us. We won't mess with you. We don't care what you're doing." [*Id.* at 26 (Papworth Dep. 25:12-14)]. In reference to the Gravel Driveway, Superintendent Wade told Plaintiff (1) to "[l]eave it alone," (2) to "not build on it," and (3) "don't change it" [*Id.* (Papworth Dep. 25:19-23)]. Plaintiff understood Superintendent Wade to be "allowing" him to mow the Gravel Driveway and "replac[e] gravel that had washed away" [*Id.*]. He "had no problem with that" arrangement [*Id.*]. Currently, "the postmaster for th[e] region has allowed" Plaintiff to keep a mailbox within the Gravel Driveway [*See* Doc. 34-2 at 31 (Johnson Dep. 30:2-23)].

On December 27, 2022, Plaintiff filed a complaint under the Quiet Title Act, 28 U.S.C. § 2409a, alleging, as relevant here, that Plaintiff has an easement by necessity, by prior use, or

---

the sign in the "floodplain," "on the right-hand side" "as you're heading towards Glades Road out of the Driveway" [*Id.* at 28 (Papworth Dep. 27:6-9)]. Viewing the facts and inferences in the light most favorable to Plaintiff, the Court presumes that Plaintiff did not place the sign on the Gravel Driveway.

4

both, to use the Gravel Driveway to access the Papworth Property [*See* Doc. 1 ¶¶ 33-48]. Defendant filed an Answer, raising the Quiet Title Act's statute of limitations as an affirmative defense [Doc. 18 at 6]. Thereafter, Defendant filed the instant "Motion for Summary Judgment" [Doc. 32], arguing, among other things, that it is entitled to judgment as a matter of law because the Quiet Title Act's statute of limitations bars Plaintiff's claims [Doc 32 at 7-10].

II. **Legal Standard**

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the nonmoving party and view all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. The Court may "not weigh the evidence or make credibility determinations." *See Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021). The moving party bears the burden of demonstrating that no genuine dispute of material fact exists. *See Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 323 (6th Cir. 2023) (citing *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516 (6th Cir. 2019)). Once the moving party has met this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *See Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022); *see also* Fed. R. Civ. P. 56.

"A genuine issue" exists if "there are disputes over facts that might affect the outcome of the suit under the governing law." *See Regions Bank v. Fletcher*, 67 F.4th 797, 802 (6th Cir. 2023) (citation and quotation omitted). "[T]he mere existence of a scintilla of evidence in support of" a nonmovant's position is "insufficient" to overcome a summary judgment motion. *See Bennett*, 86 F.4th at 323 (citation omitted).

5

### III. Analysis

The Quiet Title Act's statute of limitations generally bars a "civil action" that does not "commence[] within twelve years of the date" the action "accrued." *See* 28 U.S.C. § 2409a(g). An action accrues "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States" to an interest in the real property. *Id.* "Section 2409a(g) is a nonjurisdictional claims-processing rule," *see Wilkins v. United States*, 598 U.S. 152, 165 (2023), which Defendant invoked by raising it as an affirmative defense, [*see* Doc. 18 at 6].

The Sixth Circuit has not substantively addressed the Quiet Title Act's statute of limitations. *Cf. Saylor v. United States*, 315 F.3d 664, 670-71 (6th Cir. 2003). Other Courts of Appeals, however, have held that "a claim" accrues once the United States "puts its interest in conflict with that of the plaintiff." *See NE 32nd St., LLC v. United States*, 896 F.3d 1240, 1244 (11th Cir. 2018). "[C]ourts have consistently held that the [Quiet Title Act]'s statute of limitations standard 'does not require the government to provide explicit notice of its claim' in order for the statute of limitations to being running." *See F.E.B. Corp. v. United States*, 818 F.3d 681, 686 (11th Cir. 2016) (quoting *Spirit Lake Tribe v. N. Dakota*, 262 F.3d 732, 738 (8th Cir. 2001)). "The government's claim need not be clear and unambiguous." *Id.* (citation and quotation omitted). "Knowledge of the claim's full contours is not required." *Id.* All that Section 2409a(g) requires is a plaintiff's "reasonable awareness that the Government claims some interest adverse to" his. *Id.* (quoting *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980)). "[T]he merits of the government's claim" are ultimately "irrelevant" to the statute of limitation inquiry because "'[e]ven invalid government claims trigger the [Act's]

6

limitations period.'" *Id.* (quoting *Spirit Lake*, 262 F.3d at 738; *citing Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 769 (4th Cir. 1991)).

Here, the record shows that Plaintiff knew or should have known of the United States's adverse interest in the Gravel Driveway in 1996, at the earliest, and at least by 2000. Either way, Plaintiff did not file suit within the Quiet Title Act's twelve-year statute of limitations. Around the time Plaintiff bought the Papworth Property (in March 1996), he had been told that the Papworth Property "abutted federal property" [Doc. 34-10 at 16, 20 (Papworth Dep. 15:7-10, 19:18-24)]. And when Ranger Parrish asked Plaintiff to take the wooden sign near the Gravel Driveway down, sometime between 1996 and 1998, Plaintiff "immediately took [the sign] down" [*See id.* at 28-30 (Papworth Dep. 27:5-9, 28:12-25, 29:1-10)]. That interaction demonstrates that Plaintiff understood that the United States had an interest, adverse to his, in the area where he attempted to place the sign within the 13-acre tract earmarked for the Foothills Parkway.

Even if Plaintiff's initial knowledge of the federal property and interaction with Ranger Parrish were not enough alone to apprise Plaintiff of the United States's adverse interest in the Gravel Driveway specifically (as opposed to the entire 13-acre tract earmarked for the Foothills Parkway), Plaintiff's conversation with Superintendent Wade squarely put the United States's interest in the Gravel Driveway in conflict with Plaintiff's. Superintendent Wade made plain that Plaintiff must "[l]eave" the Gravel Driveway "alone," "not build on it," and not "change it" [*Id.* at 26 (Papworth Dep. 25:19-23)]. Plaintiff even understood that Superintendent Wade's directive that he not "mess with" the United States's interest in the Gravel Driveway constrained his authority to care for the Gravel Driveway [*See id.* (Papworth Dep. 25:19-23)].

7

These interactions, combined, show that Plaintiff "knew or should have known of the claim of the United States" to an interest in the Gravel Driveway, adverse to his, by at least 2000. *See* 28 U.S.C. § 2409a(g); *see also NE 32nd St., LLC*, 896 F.3d at 1244. It is immaterial that Plaintiff may not have appreciated the full contours of the United States's interest in the Gravel Driveway. *See F.E.B. Corp.*, 818 F.3d at 686. Plaintiff's combined interactions triggered the statute of limitations by at least 2000. *Id.* (citation omitted). And he did not file suit until December 2022, approximately ten (10) years too late [*See* Doc. 1].

Plaintiff attempts to resist this conclusion by arguing that the United States "sanctioned" his interest in the Gravel Driveway by (1) remaining silent after he built a second sign on the Gravel Driveway and (2) "allow[ing]" him to place "a mailbox within" the Gravel Driveway [*See* Doc. 35 at 6]. But this argument misconstrues the law. "[C]ourts have consistently declined to require affirmative adverse government action to initiate the limitations period" or "to keep an initiated period running." *See F.E.B. Corp.*, 818 F.3d at 692 (collecting cases from the Seventh, Eighth, Ninth, and Tenth Circuits). Section 2409a(g) does not require Plaintiff to have "knowledge of the claim's full contours" for the statute of limitations period to run. *See id.* at 686 (cleaned up) (citation omitted). What matters is when Plaintiff knew or should have known that the United States "put[] its interest in conflict with" his. *See NE 32nd St., LLC.*, 896 F.3d at 1244. Even viewing the facts in the light most favorable to Plaintiff that occurred by at least 2000, more than twelve (12) years before he filed suit [*See* Doc. 1]. *See NE 32nd St., LLC.*, 896 F.3d at 1244. Thus, the Court dismisses Plaintiff's claims without prejudice as untimely. *See* 28 U.S.C. § 2409a(g).

## IV. Conclusion

For the reasons above, the Court **GRANTS** Defendant United States of America's "Motion for Summary Judgment" [Doc. 32] and **DISMISSES** this action without prejudice. An appropriate judgment shall enter.

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge